UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: RUSSELL MOORE and
WANDA MOORE

CASE NO. 11-11850-DWH
CHAPTER 12

RUSSELL MOORE and WANDA MOORE             PLAINTIFFS

VERSUS                                    ADV. PROC. NO. 11-1098-DWH

REGIONS BANK                              DEFENDANT

OPINION

On consideration before the court is a complaint filed by Russell Moore and Wanda Moore, ("debtors"), to determine the validity of a lien held by the defendant, Regions Bank, ("Regions"); an answer and affirmative defenses having been filed Regions; a trial having been conducted on the merits; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

JURISDICTION

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), (K), and (O).

II.

## FACTUAL SUMMARY

In conjunction with their sweet potato farming operations, the debtors borrowed crop production funds from Regions during 2007, 2008, and 2009. In each year, the debtors executed promissory notes in favor of Regions which were secured by their crops and equipment. For example, in 2009, the collateral description in the Uniform Commercial Code financing statements provided the following:

| | |
|---|---|
| 06/01/2009 | All crops, and farm products whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter raised or grown, all accessions, additions, replacements and substitutions relating to any of the foregoing...Sweet Potatoes |
| 08/31/2009 | 5,000 potato boxes and all farm equipment, now or hereafter existing or acquired, any and all accessions and additions now or hereafter made or any to any of the items described above, any repair parts, substitutions, and replacements therefor, and all attachments and improvements now or hereafter placed upon or used in connection therewith or with any part thereof; all books and records and general intangibles pertaining to any of the above, and all proceeds and products of any of the above Equipment (List Attached) |

Consistent with the acknowledgment by the Office of the Mississippi Secretary of State, the financing statements remain effective until their lapse dates which are five years from the date of recordation. An itemized equipment list was appended to each filing.

Unfortunately, in 2009, there was a complete crop disaster, and the debtors were unable to repay their loan to Regions. According to Charles Joey Williams, the Regions representative, the total debt now owed by the debtors is $2,789,663.64. This also includes other loans secured by equipment and other assets owned by the debtors.

In 2010, Regions decided to discontinue the lending arrangement. However, Regions did agree to forebear from foreclosing on the debtors' assets so that they could attempt to farm for that year. To effectuate the forbearance, the maturity date of the debtors' loan was extended on two occasions, from December 19, 2009, to March 19, 2010, and then again to June 19, 2010. Both of the letter agreements, which were executed by Russell Moore, contained the following language:

> This letter is not intended to be, and shall not be deemed or construed to be, a novation with regard to the Loan, and except as expressly modified by this letter, all terms, conditions, and provisions of the Loan (including, without limitation) Borrower's obligation to make monthly payments of interest or principal and interest as the terms of the Loan documents may provide), and all documents and instruments evidencing the Loan, remain and continue in full force and effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to further extend the maturity date, upon the New Maturity, and we have not waived any, and we reserve all of, our rights and remedies under any and all of the Loan documents with respect to any existing or future default, whether known or unknown to us.

As a result of the forbearance, the debtors were able to utilize their encumbered equipment in order to plant and harvest a crop in 2010. The funds necessary to accomplish this came from the following sources:

a) A NAP disaster payment in the sum of $100,000.

b) A contribution from Perfect Pack, Inc., a corporation owned by the debtors, in the sum of $80,000.

c) The liquidation of the debtors' IRAs in the total sum of $80,000.

d) The liquidation of the debtors' son's college fund in the sum of $9,000.

e) A crop loan from Crop Production Services ("CPS"), which was secured by a first lien on the 2010 crop.

After the CPS lien was satisfied, and other related expenses were paid, the debtors retained net proceeds from the 2010 crop in the total sum of $410,347.00.

On April 25, 2011, the debtors filed their voluntary petition for relief pursuant to Chapter 12 of the United States Bankruptcy Code. Immediately thereafter, they filed their complaint against Regions requesting a determination by this court that Regions had no lien on the balance of the proceeds remaining from the 2010 crop. In addition, they sought to use these proceeds to begin planting their 2011 crop.

III.

DISCUSSION

The first questions that must be answered is whether Regions holds a perfected security interest in the balance of funds remaining from the 2010 crop. Excepting the NAP disaster payment, mentioned below, there is no dispute that Regions advanced no new funds which were utilized in the production of this crop. As such, in order to have a security interest, Regions must rely on the effectiveness of the lien documents that were filed and recorded in 2007, 2008, and 2009, as well as, the language set forth in the two letter agreements which extended the maturity date of the 2009 loan. The court also recognizes that had Regions not consented to the forbearance, the production of the 2010 crop would have been highly unlikely.

Without question, the description in the UCC financing statements is identical to the type collateral that generated the net proceeds remaining. The financing statements have neither lapsed nor have they been terminated and would, therefore, remain effective until June and August, 2014.

4

As noted hereinbelow, Regions allowed the debtors to have an opportunity to farm in 2010 by forbearing from a foreclosure. In the extension agreements, Russell Moore acknowledged that all of the terms, conditions, and provisions of the 2009 loan would remain and continue in full force and effect. A part of the funding utilized to plant the 2010 crop came from the NAP disaster payment in the sum of $100,000.00. Since there was no proof to the contrary, the court must assume that this payment was related to the 2009 crop upon which Regions clearly held a lien.

Pertinent to this proceeding is §75-9-102(34), Miss. Code Ann. ("MCA"), which provides the following:

> "Farm products means goods, other than standing timber, with respect to which the debtor is engaged in a farming operation and which are:
>
> A.    Crops grown, growing, or to be grown, including:
>
>   (i)    Crops produced on trees, vines, and bushes; ..."

This section expressly contemplates a crop "to be grown" sometime in the future. Section 75-9-204(a) provides that a security agreement may create or provide for a security interest in after-acquired collateral. As set forth in the example hereinabove, the language in the financing statements contemplates that the security interest and lien will extend to all crops and farm products, whether owned now or acquired later, as well as, whether hereafter raised or grown.

In *Peoples Bank v. Bryan Brothers Cattle Company*, 504 F.3d 549, (5th Cir. 2007), the Fifth Circuit Court of Appeals recognized that a security interest could include after-acquired property. Based on the foregoing, this court finds that Regions' lien, perfected through the security instruments executed by the debtors prior to 2010, extends to the balance of proceeds

5

remaining from the 2010 sweet potato crop. Consequently, in order for the debtors to utilize any of these proceeds in their ongoing farming operations, they must demonstrate that the interest of Regions is adequately protected as required by §363(e) of the Bankruptcy Code.

As mentioned hereinabove, Russell Moore testified that he proposed to spend the aforesaid 2010 proceeds to begin planting his 2011 crop. He then indicated that he would obtain a loan from CPS, secured by a <u>first lien</u> on the 2011 crop, to maintain and harvest the crop. In effect, this relegates Regions' first lien position on the balance of the 2010 crop proceeds, particularly since CPS' 2010 claim was fully satisfied, to a second lien position, subordinate to CPS' lien, on what might be realized from the unplanted 2011 crop. While Regions agreed to this proposal in 2010, it should not involuntarily become the victim of a "never ending story" which the debtors could attempt to perpetuate on an annual basis.

Another issue that could become significant is Regions' position concerning the enforceability of its lien which encumbers the debtors' equipment. Regions' intent was not addressed at the most recent hearing, and it certainly could have a significant impact on the debtors' ability to continue farming.

The primary focus of the debtors' argument was to convince the court that Regions had no lien on the balance of the 2010 crop proceeds. As set forth hereinabove, the court disagrees with this position. The debtors' proposed "roll over" scenario for 2011, without the consent of Regions, provides no discernable adequate protection for Regions' interest in the 2010 crop proceeds. Consequently, the debtors' position is not well taken and must be overruled.

A separate order will be entered consistent with this opinion contemporaneoulsy herewith.

This the 10th day of June, 2011.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE